UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEFFERSONKING NWANEKE ANYANWU,

    Petitioner,

v.

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT FIELD OFFICE DIRECTOR,

    Respondent.

CASE NO. 2:24-CV-00964-LK-GJL

REPORT AND RECOMMENDATION

NOTING DATE: **October 1, 2024**

Petitioner Jeffersonking Nwaneke Anyanwu is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Proceeding *pro se*, Petitioner brings this 28 U.S.C. § 2241 habeas action alleging his prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution. Dkt. 6. Currently before the Court for consideration is Respondent's combined Motion to Dismiss the Petition and Return. Dkt. 8.

Having considered the parties' submissions, the balance of the record, and the governing law, the undersigned recommends that the Motion to Dismiss (Dkt. 8) be **DENIED** and that the Petition (Dkt. 3) be **GRANTED** with respect to Petitioner's request for a bond hearing.

REPORT AND RECOMMENDATION - 1

# I. BACKGROUND

**A.      Immigration Status and Proceedings**

Petitioner is a native and citizen of Nigeria. Dkt. 9 at 2 (Chavez Declaration). Though he was initially admitted to the United States as a conditional lawful permanent resident, this status was terminated in 2020 after Petitioner neglected to petition for removal of the conditions on his permanent residence. *Id.*

On April 28, 2022, Petitioner was federally convicted and sentenced to 63-months' incarceration following his guilty plea to numerous counts of conspiracy to commit money laundering entered in *United States v. Anyanwu*, No. 2:19-cr-00190-CW-1 (D. Utah). As part of his plea, Petitioner admitted to personally laundering over $1.1 million in fraudulent proceeds and further admitted that the criminal enterprise, with which he was involved, laundered over $6.6 million in fraudulent funds. Dkt. 10-2 at 4–5 (Statement in Advance of Guilty Plea). In addition to a term of incarceration, Petitioner's sentence included an order to pay $8,485,749.47 in restitution. Dkt. 9 at 2 (Chavez Declaration); Dkt. 10-3 at 7 (Judgment of Conviction).

A few months before Petitioner completed his federal sentence, the Department of Homeland Security ("DHS") issued a Notice to Appear charging Petitioner as removable under 18 U.S.C. § 1227(a)(1)(D)(i) (termination of conditional permanent residence), 18 U.S.C. § 1227(a)(2)(A)(i) (conviction for a crime of moral turpitude within 5 years of admission), and 18 U.S.C. § 1227(a)(2)(A)(iii) (conviction for a qualifying aggravated felony). Dkt. 9 at 2 (Chavez Declaration); Dkt. 10-4 (Notice to Appear). Petitioner completed his federal sentence on July 12, 2023, and was transferred to ICE custody to begin removal proceedings. Dkt. 9 at 2 (Chavez Declaration).

On January 26, 2024, an Immigration Judge ("IJ") ordered Petitioner's removal to Nigeria. Dkt. 9 at 3 (Chavez Declaration); Dkt. 10-5 (Removal Order). Petitioner first attempted to appeal the IJ's decision in February 2024, but the Board of Immigration Appeals ("BIA") returned the matter to the IJ to provide a more complete record. Dkt. 9 at 3 (Chavez Declaration); Dkt. 10-6 (BIA Decision). The IJ then issued a more thorough written decision ordering Petitioner's removal on April 26, 2024. Dkt. 10-7 (Written Decision). Shortly thereafter, Petitioner filed a second timely appeal to the IJ's removal decision. Dkt. 9 at 3 (Chavez Declaration). The briefing deadline established by the BIA for all parties was June 20, 2024. *Id.* The DHS filed its briefing three days late, and Petitioner sought leave to file an untimely brief on July 22, 2024. *Id.* Based on the record currently before the Court, Petitioner's second appeal to the BIA and his request to file an untimely brief remain pending. *Id.*

**B.      Federal Habeas Petition**

Petitioner initiated this action for writ of habeas corpus on June 28, 2024, naming United States Immigration and Custody Enforcement Field Office Director ("Field Office Director") as Respondent. Dkts. 1, 1-1. After Petitioner corrected his initial filing deficiencies, the Court entered an Order directing Respondent Field Office Director to show cause why the Court should not grant habeas relief. Dkt. 7. In response, Respondent filed a combined Motion to Dismiss the Petition and Return. Dkt. 8. Petitioner responded in opposition to the Motion to Dismiss, Dkt. 11, and Respondent filed a Reply in support, Dkt. 12. This matter is now fully briefed and ripe for consideration.

**II.      DISCUSSION**

The sole ground for habeas relief raised in the Petition is that Petitioner's continued detention at NWIPC without an individualized bond hearing arguably violates constitutional

guarantees of due process. Dkt. 6; *see also* Dkt. 11. As relief, Petitioner requests that this Court order his release from custody or, in the alternative, order that he be provided an individualized bond hearing. Dkt. 6 at 1–2, 14.

Respondent, however, maintains that Petitioner is not entitled to either form of relief, arguing that Petitioner's detention comports with due process. Dkts. 8, 12. Respondent argues further that, even if the Court were to conclude a bond hearing is necessary, it should depart from prior decisions in this District and require that Petitioner carry the burden of proof at any such hearing. Dkt. 8 at 10–11.

The Court disagrees with Respondent on both accounts and finds Petitioner's length of detention absent a hearing has become unreasonable such that due process requires the Respondent to promptly provide Petitioner a bond hearing at which the Government bears the burden of supporting continued detention without bond.

A. **Petitioner's Continued Detention Without a Bond Hearing is Unreasonable**

This case involves mandatory detention under 8 U.S.C. § 1226(c) as Petitioner has been deemed removable for committing an aggravated felony covered in 8 U.S.C. § 1227(a)(2)(A)(iii) and as defined in §§ 1101(a)(43)(D) & (U). Dkt. 10-5 (Removal Order); Dkt. 10-7 (Written Decision). It is undisputed that Petitioner's mandatory detention pending removal and without an individualized bond decision complies with the applicable statutory scheme. Dkt. 6 at 13; *see also Avilez v. Garland,* 69 F.4th 525, 529–530 (9th Cir. 2023). As such, the relevant inquiry before the Court is solely whether Petitioner's term of mandatory pre-removal detention has exceeded constitutional reasonableness such that a bond hearing is required by due process.

In *Demore v. Kim*, the Supreme Court rejected a due process challenge to mandatory detention under § 1226(c), holding that "the Government may constitutionally detain deportable

[noncitizens] during the limited period necessary for their removal proceedings." 538 U.S at 518–21, 526 (2003). Justice Kennedy's concurring opinion, which created the majority, reasoned that, beyond this limited period, due process may require "an individualized determination as to [a noncitizen's] risk of flight and dangerousness if the continued detention *became unreasonable or unjustified.*" *Id.* at 532 (emphasis added).

Since *Demore*, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). Although the due process analysis for prolonged detention under § 1226(c) remains an open question in the Ninth Circuit,[1] this Court and "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" *Martinez v. Clark*, No. 2:18-cv-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (quoting *Sajous v. Decker*, No. 18-cv-2447-AJN, 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018)) (collecting cases); *Djelassi v. ICE Field Office Director*, 434 F. Supp. 3d 917, 923–24 (W.D. Wash. 2020) (granting habeas petition and ordering bond hearing for noncitizen whose mandatory detention had become unreasonably prolonged); *see also Ashemuke v. ICE Field Office Director*, No. 2:23-cv-1592-RSL-MLP, 2024 WL 1683797, at *6 (W.D. Wash. Feb. 29, 2024), *report and recommendation*

---

[1] *See Avilez*, 69 F.4th at 538 (declining to rule on whether due process required a bond hearing for a noncitizen detained under § 1226(c) and remanding to the district court for consideration of that claim); *Martinez v. Clark*, 36 F.4th 1219, 1223 (9th Cir. 2022), *judgment vacated on other grounds*, 144 S. Ct. 1339 (2024) ("Whether due process requires a bond hearing for [noncitizens] detained under § 1226(c) is not before us today. And we take no position on that question.").

REPORT AND RECOMMENDATION - 5

*adopted*, 2024 WL 1676681 (W.D. Wash. Apr. 18, 2024) (denying bond hearing where mandatory detention was not yet unreasonable).

Where a § 1226(c) detainee has not received a prior bond hearing, this Court applies the "multi-factor analysis that many other courts have relied upon to determine whether § 1226(c) detention has become unreasonable." *Martinez*, 2019 WL 5968089, at *6–7. This analysis, which is referred to as the *Martinez* test, involves the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at *7.

As Petitioner has not received a prior bond hearing, the Court will now apply the *Martinez* test to assess whether his ongoing detention has become unreasonable.

1. Length of Petitioner's Detention to Date

The current length of Petitioner's detention is the first and most important factor of the analysis. *See, e.g.*, *Martinez*, 2019 WL 5968089, at *9; *Sajous*, 2018 WL 2357266, at *10. The longer a noncitizen's mandatory detention continues beyond a "brief" period of detention, the harder such detention is to justify without an individual bond determination. *See Sajous*, 2018 WL 2357266, at *10 ("[D]etention that has lasted longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months."); *Ashemuke*, 2024 WL 1683797, at *4 (concluding the petitioner's ongoing detention of eleven months—and seven months at the time his petition was filed—extended beyond a presumptively valid brief period of detention); *Martinez*, 2019 WL 5968089, at *9 (finding nearly thirteen-

month detention weighed in favor of granting a bond hearing); *Juarez v. Wolf*, No. 20-cv-1660-RJB-MLP, 2021 WL 2323436, at *5 (W.D. Wash. May 5, 2021), *report and recommendation adopted*, 2021 WL 2322823 (W.D. Wash. June 7, 2021) (weighing petitioner's fourteen-month period of detention in his favor); *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 963–64 (D. Minn. 2019) ("Although there is no bright-line rule for what constitutes a reasonable length of detention, Petitioner's [twelve-month] detention has lasted beyond the 'brief' period assumed in *Demore*."); *see also Demore*, 538 U.S at 531 (upholding ongoing detention of six months).

      Here, Petitioner was detained for just under twelve months at the time he filed his Petition, and his detention has now extended to approximately fourteen months. Because Petitioner's current period of detention is more than double the presumptively reasonable six-month period discussed in *Demore*, this first factor weighs in favor of granting a bond hearing.

      Seeking a different result, Respondent argues that the Ninth Circuit's unpublished decision in *Fraihat v. Barr*, 790 F. App'x 120 (9th Cir. 2020), demonstrates that length of detention need not be included as part of the due process inquiry. Dkt. 8 at 6. While Respondent is correct that the Ninth Circuit did not consider length of detention in *Fraihat*, they ignore critical context for this decision: the *Fraihat* petitioner received two prior bond hearings and thus "had a meaningful opportunity to be heard on the issue relevant to his continued detention." *Fraihat*, 790 F. App'x at 121–22. Although that petitioner was detained for another two years without an *additional* bond hearing, the Ninth Circuit concluded he failed to show "that the Constitution requires consideration of the length of his detention *in this context*." *Id.* at 122

(emphasis added). As the Petitioner in this case has not received prior opportunities to be heard on the propriety of his detention, Respondent's reliance on *Fraihat* is misplaced.[2]

Respondent next argues that, because Petitioner extended his own detention by choosing to challenge his Removal Order, the duration of his detention occurring after January 26, 2024, should not be considered. Dkt. 8 at 7–8.

In support of this argument, Respondent relies on the Ninth Circuit's decision in *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203 (9th Cir. 2022), which assessed whether *additional* procedural protections were required for those detained under 8 U.S.C. § 1226(a). Unlike Petitioner who is detained under § 1226(c), § 1226(a) detainees are "not without process" during their detention and may obtain bond hearings before an IJ upon a showing of "materially changed circumstances." *Rodriguez Diaz*, 53 F.4th at 1207 (explaining this is distinguishable from "the context of detentions for which no individualized bond hearings [have] taken place at all because the statutes on their faces [do] not allow for them."). As a result, the Ninth Circuit in *Rodriguez Diaz* reasoned that it could not "simply count [the petitioner's] months of detention and leave it at that." *Id.* at 1208. Examining length of detention through this more critical lens, the Circuit Court concluded that the significance of the petitioner's eighteen-month detention was diminished because most of that period "arose from the fact that he chose to challenge" his removal order through all available channels. *Id.* at 1207–08.

Respondent fails to persuade this Court that the more searching inquiry applicable to those who have received prior bond hearings is required here. But, even if the Court were to limit

---

[2] Notably, this Court generally applies the three-factor test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), where a detainee has received at least one prior bond hearing. *See Ortuno-Perez v. ICE Field Off. Dir.*, No. 2:23-cv-344-BHS-DWC, 2023 WL 5807305 (W.D. Wash. Aug. 1, 2023), *report and recommendation adopted,* 2023 WL 5802516 (W.D. Wash. Sept. 7, 2023). In those circumstances, length of detention plays a minor role in the due process analysis and is not "accorded overwhelming weight." *Ortuno*-Perez, 2023 WL 5807305, at *5.

its consideration to the first seven months of Petitioner's detention, the first factor would still tilt in his favor as this period exceeds the six-month benchmark established in *Demore*.

### 2. Likely Duration of Future Detention

The Court next "considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9.

At this juncture, any estimate as to how long Petitioner's detention will continue requires a degree of speculation. Even so, the fact Petitioner is currently in the process of appealing his removal order to the BIA provides some context. Assuming the BIA issues an unfavorable removal decision and Petitioner seeks judicial review of that decision, his detention is likely to continue for at least another twelve months. *See* U.S. Court of Appeals for the Ninth Circuit, FREQUENTLY ASKED QUESTIONS, www.ca9.uscourts.gov/content/faq.php (last accessed Sept. 6, 2024; addressing anticipated timelines for civil appeal from notice of appeal until final decision).

Given the degree of speculation involved in this estimation, however, the second factor weighs only slightly in favor of granting a bond hearing. *See Ashemuke*, 2024 WL 1683797, at *4 (concluding uncertainty inherent to removal proceedings weighed neutrally upon relief); *Barraza v. ICE Field Office Director*, No. 2:23-cv-1271-BHS-MLP, 2023 WL 9600946, at *6 (W.D. Wash. Dec. 8, 2023), *report and recommendation adopted*., 2024 WL 518945 (W.D. Wash. Feb. 9, 2024) (acute possibility of continued detention pending active appeal weighs in favor of granting a bond hearing).

Respondent disagrees, arguing this second factor should weigh neutrally upon relief. Dkt. 8 at 8. Respondent posits that "most detention" under § 1226(c) could be deemed unreasonable simply because a petitioner has opted to appeal their removal order. *Id.*

REPORT AND RECOMMENDATION - 9

The protections inherent in the multi-factor *Martinez* test adequately address Respondent's slippery slope argument. It is true that the second *Martinez* factor will, in most cases, favor detainees who challenge their removal orders. But the opposite could be said of the fourth *Martinez* factor (nature of the crime committed), which will largely weigh *against* detainees who—like Petitioner—are deemed removable following convictions for an aggravated felony. Nevertheless, these are just two in the constellation of factors comprising the *Martinez* test, and prior applications of the test confirm that no single factor has an outsized effect on whether detention is ultimately found reasonable. *Compare Murillo-Chavez v. Garland*, No. 22-cv-303-LK-MLP, 2022 WL 16555994 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022) (weighing first and second factor in favor of petitioner but concluding nineteen-month detention was reasonable) *with Pasillas v. ICE Field Off. Dir.*, No. 21-cv-681-RAJ-MLP, 2021 WL 8084206 (W.D. Wash. Oct. 18, 2021), *report and recommendation adopted*, 2022 WL 1127715 (W.D. Wash. Apr. 15, 2022) (weighing fourth factor in favor of respondent but concluding seventeen-month detention was unreasonable).

       3.    <u>Criminal History</u>

Under the third and fourth factors, the Court assesses the current length of detention against the length of the detainee's criminal sentence and the nature of his crime. *Martinez*, 2019 WL 5968089, at *9; *Cabral v. Decker*, 331 F. Supp. 3d 255, 262 (S.D.N.Y, 2018). These factors are indicative of whether the detainee would be a danger to the community or a risk of flight such that a bond hearing would be futile. *See Cabral*, 331 F. Supp. 3d at 262; *Ashemuke*, 2024 WL 1683797, at *5.

Here, Petitioner's criminal conviction resulted in a 63-month custodial sentence, Dkt. 10-3 at 7 (Judgment of Conviction), so his time in immigration detention has not yet exceeded his criminal sentence. As for the nature of his crime, Petitioner admitted to personally laundering over $1.1 million and participating in a conspiracy that laundered over $6.6 million in fraudulent funds. Dkt. 10-2 at 4–5 (Statement in Advance of Guilty Plea). Given the severity of his crimes and his substantial role in the conspiracy, Petitioner owes over $8 million in restitution. Dkt. 9 at 2 (Chavez Declaration); Dkt. 10-3 at 7 (Judgment of Conviction).

Considering the length of Petitioner's sentence, the substantial conspiracy in which he was a part, and the significant amount owed in restitution, the Court finds the third and fourth factors weigh in favor of the Respondent. *Compare Ashemuke*, 2024 WL 1683797, at *5 (weighing this factor in favor of respondent where petitioner was ordered to pay restitution to victims of online romance scams) *with Murillo-Chavez*, 2022 WL 16555994 at *6 (concluding this factor *significantly* favors respondent where the petitioner was convicted of "multiple crimes against children as well as a weapons offense").

4.  Conditions of Detention

Under the fifth factor, the Court considers the conditions of Petitioner's current detention. *Martinez*, 2019 WL 5968089, at *9. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger [the] argument that he is entitled to a bond hearing." *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019) (citation and internal quotations omitted).

The record before the Court contains some evidence regarding the conditions of Petitioner's detention at NWIPC. The Petition, which is signed under penalty of perjury, includes descriptions of penal-like conditions at NWIPC that appear to be based on Petitioner's personal

knowledge. Dkt. 6 at 6–8. But because these descriptions are interspersed between generalized statements and legal reasoning, it is difficult for the Court to discern what is argument and what may be accorded evidentiary value. Even so, Petitioner also submitted a copy of the NWIPC Detainee Handbook, which reinforces his allegations that restrictions placed on his movements and conduct at NWIPC are similar to those restrictions imposed in penal institutions. *See, e.g.*, Dkt. 6-1 at 24–25.

Based on the record before it, the Court finds this factor favors Petitioner. *Juarez*, 2021 WL 2323436, at *6 (concluding fifth factor favored the petitioner given allegations regarding "restrictions on privacy and autonomy" and "a focus on punitive discipline" at NWIPC).

### 5. Delays in Removal Proceedings

Under the sixth and seventh factors, the Court considers "the nature and extent of any delays in the removal proceedings caused by petitioner and the government, respectively." *Martinez*, 2019 WL 5968089, at *10. A noncitizen is entitled to raise legitimate defenses to his removal, "and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Liban M.J.*, 367 F. Supp. 3d at 965 (citing *Hernandez v. Decker*, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018)). Thus, this factor only weighs against a petitioner when he "has 'substantially prolonged his stay by abusing the processes provided.'" but not when he "simply made use of the statutorily permitted appeals process." *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). On the other hand, unreasonable delays caused by immigration courts or government officials weigh against a respondent. *Sajous*, 2018 WL 2357266, at *11.

Here, there is no evidence of dilatory or bad faith conduct causing an undue delay in Petitioner's ongoing removal proceedings. Therefore, the Court assesses the sixth and seventh factor as weighing neutrally on relief.

Neither the Petitioner nor the Respondent agree with this assessment. Respondent argues that Petitioner's failure to submit timely briefing to the BIA constitutes undue delay, Dkt. 8 at 9, whereas Petitioner argues the government has dragged its heels throughout his removal proceedings, Dkt. 6 at 10–11.

As an initial matter, absent evidence of bad faith or intent to delay, Petitioner's failure to submit a timely brief is not the sort of conduct considered on this factor. Moreover, if garden-variety untimeliness established the benchmark for undue delay, then the Court would have to consider the other delays present in the record, which effectively neutralize any delay caused by Petitioner. By way of illustration, the DHS' tardy briefing before the BIA would qualify as undue delay weighing against Respondent. Dkt. 9 at 3 (Chavez Declaration). Also, the IJ's initial failure to provide a complete record for the BIA's review, which delayed removal proceedings for several months, would similarly qualify and be held against Respondent. Dkt. 9 at 3 (Chavez Declaration); Dkt. 10-6 (BIA Decision).

In the Court's view, however, these oversights do not rise to the level of bad faith or intentional delay that should weigh against either party.

6. <u>Likelihood Removal Proceedings Will Result in a Final Order of Removal</u>

Finally, the Court considers "the likelihood that the removal proceedings will result in a final order of removal." *Liban M.J.*, 367 F. Supp. 3d at 965. "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at *10 (citing *Sajous*, 2018 WL 2357266, at *11). "Where a noncitizen has not asserted any

grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Id.* at *10. "But where a noncitizen has asserted a good faith challenge to removal, the categorical nature of the detention will become increasingly unreasonable." *Id*. (quotations omitted).

Given the current posture of Petitioner's removal proceedings, there is simply not enough information available to predict whether Petitioner's removal proceedings will result in a final order of removal. In the absence of sufficient information to assess the likely success of any challenge to Petitioner's removal, the Court finds this final factor is neutral.

7. <u>Weighing the Factors</u>

As discussed above, three factors weigh in favor of Petitioner, including the first and most important factor. Next, two of the eight favors weigh in favor of the Respondent, and the remaining three factors are neutral. All considered, the undersigned finds that the factors in Petitioner's favor (*i.e.*, the current and future length of his detention and the conditions of his confinement) outweigh those favoring Respondent (*i.e.*, factors relating to the underlying criminal conviction and sentence).

Thus, the Court concludes Petitioner's detention has become unreasonable such that an individualized bond hearing is required to comport with due process.

**B.     Respondent Should Bear the Burden of Supporting Continued Detention**

Having concluded that Petitioner is entitled to a bond hearing, the Court must next consider who shall bear the burden of proof at that hearing.

When a § 1226(c) detainee is subject to unreasonably prolonged detention, this Court has previously required that a bond hearing be conducted in accordance with the Ninth Circuit's

REPORT AND RECOMMENDATION - 14

decision in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). *See, e.g., Juarez v. Wolf*, No. 20-cv-1660-RJB-MLP, 2021 WL 2322823 (W.D. Wash. June 7, 2021); *Pasillas v. ICE Field Off. Dir.*, No. 21-cv-681-RAJ-MLP, 2022 WL 1127715 (W.D. Wash. Apr. 15, 2022).

In *Singh*, the Ninth Circuit held that § 1226(c) detainees subject to prolonged detention are entitled to a bond hearing before an IJ wherein the government bears the burden of proving the detainee is a danger or flight risk by clear and convincing evidence. 638 F.3d at 1203–04. This heightened burden reflects the significant liberty interest at stake when a person is detained for an extended period without a bond hearing. *Id.* (citing *Addington v. Texas*, 441 U.S. 418, 427 (1979)).[3]

In *Jennings v. Rodriguez*, the Supreme Court reversed *Singh* and other Circuit decisions that interpreted § 1226(c) and similar statutory provisions to include implicit procedural protections. 583 U.S. 281 (2018). Following *Jennings*, however, this Court and other district courts continue to apply the reasoning in *Singh* to conclude that § 1226(c) detainees are entitled to bond hearings as a matter of constitutional due process rather than implicit statutory guarantees. *See Juarez*, 2021 WL 2323436, at * 8 (W.D. Wash. May 5, 2021) (collecting cases); *Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *7 (N.D. Cal. Jan. 25, 2019) ("[N]early all the courts that have granted habeas petitions in 1226(c) cases post-*Jennings* have held that the government bears the burden of proof by clear and convincing evidence.") (citation omitted).

---

[3] It is important to note that the text of § 1226(c) does not explicitly require a bond hearing for those subject to mandatory detention. Thus, in assessing the rights of § 1226(c) detainees subject to prolonged detention, the Ninth Circuit interpreted the statute to avoid what it considered a significant constitutional issue. *See Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008).

Relying on *Jennings* and the Ninth Circuit's decision in *Rodriguez Diaz*, Respondent argues that Petitioner should bear the burden of proof at any court-ordered bond hearing. Dkt. 8 at 10–11 (citing *Jennings,* 583 U.S. 281 and *Rodriguez Diaz*, 53 F.4th 1189). The Court does not agree.

Decided post-*Jennings, Rodriquez Diaz* concerned what additional procedural protections may be owed to individuals detained under § 1226(a) as a matter of constitutional law. 53 F.4th at 1202. As discussed above, *Rodriguez Diaz* found that "existing agency procedures" provided sufficient protections for § 1226(a) detainees; as a result, the Ninth Circuit declined to extend the procedural protections addressed in *Singh* to § 1226(a) cases. *Id.* at 1202, 1209–10. Nevertheless, it reached no decision on *Singh*'s continued applicability to § 1226(c) detainees as a matter of constitutional law. *Id.*

Thus, the applicability of *Singh* to the constitutional rights of § 1226(c) detainees remains an open question in the Ninth Circuit. Even so, the Circuit Court has signaled that the clear and convincing evidence standard remains good law for immigration detainees subject to prolonged detention. In *Martinez v. Clark*, the Ninth Circuit held that the BIA applied the correct legal standard when it required the government to prove by clear and convincing evidence that a noncitizen detained under § 1226(c) was a danger to the community. 36 F.4th at 1230–31. The *Martinez* Court also looked to its reasoning in *Singh* as establishing "the high-water mark of procedural protections required by due process." *Id.* at 1231. Similarly, in *Aleman Gonzalez v. Barr*, the Ninth Circuit affirmed a district court decision requiring the government to bear a heightened burden of proof at bond hearing for a § 1231(a)(6) detainee as a matter of due process. 955 F.3d 762, 766 (9th Cir. 2020), *rev'd on other grounds sub nom. Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022).

Finally, as noted above, this Court's prior application of *Singh* to § 1226(c) cases aligns with other district courts within the Ninth Circuit. *See, e.g., Salesh P. v. Kaiser*, No. 22-cv-01785-BLF, 2022 WL 17082375 (N.D. Cal. Nov. 17, 2022); *Singh v. Garland*, No. 1:23-cv-01043-EPG-HC, 2023 WL 5836048 (E.D. Cal. Sept. 8, 2023); *Durand v. Allen*, No. 3:23-cv-00279-RBM-BGS, 2024 WL 711607 (S.D. Cal. Feb. 21, 2024).

Therefore, the Court is persuaded that under the circumstances of this case, Petitioner is entitled to an initial bond hearing where the government must prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community. Respondent's arguments to the contrary are unavailing.

**C.     The NWIPC Warden is the Proper Respondent in this Action**

One final matter requires attention before the Court may grant relief: Petitioner has not named the proper respondent. After this Court directed Respondent Field Office Director to file a Return, the Ninth Circuit issued a decision making clear that the proper respondent for an immigration habeas petition is the individual directly in charge of the detention facility where the petitioner is housed, not a remote supervisory official like a field office director. *Doe v. Garland*, 109 F.4th 1188, 1194–97 (9th Cir. 2024) (reversing grant of habeas relief aimed at the field office director overseeing the petitioner's detention facility). Accordingly, the undersigned recommends that Respondent Field Office Director be required to **SHOW CAUSE** why the Warden of the Northwest ICE Processing Center should not be **SUBSTITUTED** as the proper respondent in this action.

### III.     CONCLUSION

As set forth above, the undersigned recommends that Respondent's Motion to Dismiss (Dkt. 8) be **DENIED** and that Petitioner's federal habeas Petition (Dkt. 6) be **GRANTED**. It is

further recommended that Respondent Field Office Director be required to **SHOW CAUSE** why the Warden of the Northwest ICE Processing Center should not be **SUBSTITUTED** as the proper respondent in this action. Once the proper respondent is present in this action, Petitioner should be **GRANTED** a bond hearing that comports with the procedural requirements outlined in *Singh* within 30 days of an Order on this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **October 1, 2024**, as noted in the caption.

Dated this 17th day of September, 2024.

Grady J. Leupold
United States Magistrate Judge